UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLA JUNE HOOPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:15-cv-00348 – JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CHARLA JUNE HOOPER AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Charla June Hooper asserts she is entitled to disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating Plaintiff's credibility, and seeks judicial review of the decision to deny benefits. Because the ALJ failed to set forth legally sufficient reasons for rejecting the credibility of Plaintiff's subjective complaints, the action is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

### **BACKGROUND**

On February 10, 2012, Plaintiff filed her application for benefits, alleging disability beginning on May 31, 2011. (Doc. 9-6 at 2.) Her application was denied by the Social Security Administration initially on July 2, 2012, and upon reconsideration on December 3, 2012. (Doc. 9-3 at 23.) After requesting a hearing, Plaintiff testified before ALJ on August 6, 2013. (*Id.*) The ALJ found Plaintiff was not disabled under the Social Security Act, and issued an order denying her application for

benefits on July 3, 2012.  (*Id*. at 30.)  The ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner"), when the Appeals Council denied Plaintiff's request for review on January 8, 2015.  (*Id*. at 1.)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and hearing testimony. 20 C.F.R. §§ 404.1527, 416.927.

**A.   Medical Evidence**

On December 6, 2010, Plaintiff went to A.V. Family Health Medical Group to establish care. (Doc. 9-8 at 61.) She reported she had low back pain for three days, and said her neck felt like it was "pulling pain down [her] back" and right leg. (*Id.*) She described the pain as a "7" out of 10, and reported she had not taken any medication to treat it. (*Id.* at 62.) Dr. Gary Grubb ordered x-rays of Plaintiff's lumbar, thoracic, and cervical spines. (*Id.* at 45; Doc. 9-9 at 73-74.) Dr. David Lask found a "[t]ransitional vertebra at T12," "mild" narrowing at the L5-S1 level, and a "very small amount of calcification in the posterior aortic wall at the L3 level." (Doc. 9-8 at 45.) The x-ray of Plaintiff's thoracic spine showed "[m]ild levoscoloiosis [in the] upper thoracic spine." (Doc. 9-9 at 73.) Finally, Dr. Lask determined the x-ray of her cervical spine showed "[m]oderate C5-6 intervertebral disc degeneration with retrolisthesis" and "mild foraminal narrowing at C4-C5 and C5-C6 on the left and at C5-C6 on the right." (*Id.* at 74.)

On May 31, 2011, Plaintiff returned to Dr. Grubb complaining of "severe" pain in her "neck, shoulders, hips, legs, [and] fingers." (Doc. 9-8 at 59.) Dr. Grubb opined the pain was chronic and prescribed Vicodin, instructing Plaintiff to "use [it] sparingly." (*Id.*) In addition, he referred Plaintiff to Dr. Javeed Ahmed at a rheumatology and osteoporosis center, and scheduled an appointment for July 2011. (*Id.* at 59, 85.)

Prior to the consultation, Dr. Ahmed requested an electromyography study of Plaintiff's arms,

noting "complaints of tingling and numbness in both hands, nocturnal parenthesias and pain in both upper extremities and neck pain." (Doc. 9-8 at 88) Dr. Ravikumar determined the results of the EMG were "[n]ormal," and there was no "evidence of abnormal denervation changes." (*Id.*)

Dr. Ahmed performed the consultative pain evaluation on July 20, 2011. (Doc. 9-8 at 85.) He determined Plaintiff had "[p]ositive soft tissue tender and trigger points." (*Id.* at 86.) Dr. Ahmed noted Plaintiff had a positive Phalen test in both hands, as well as "[t]enderness in both the CMC joints." (*Id.*) Dr. Ahmed opined Plaintiff had "mild fibromyalgia with osteoarthritis." (*Id.*) He prescribed tramadol and trazodone for Plaintiff, and referred her to physical therapy. (*Id.*0

On July 26, 2011, Plaintiff had an MRI of the cervical spine, which showed "multilevel degenerative changes," with the "most pronounced at C5-C6 and C4-C5." (Doc. 9-9 at 46.) Plaintiff had "severe left sided neural foraminal narrowing" at both the C5-C6 and C4-C5 levels. (*Id.*) The C5-C6 level also showed "mild central spinal stenosis." (*Id.*) The "cervical code [was] normal in signal intensity and morphology," and the "visualized posterior fossa [was] within normal limits." (*Id.*).

In August 2011, Dr. Ahmed noted Plaintiff was going to physical therapy and "doing much better." (Doc. 9-8 at 48.) However, Plaintiff "still complain[ed] of pain in her neck." (*Id.*) Dr. Ahmed found Plaintiff's tender and trigger points and "improved." (*Id.*) Dr. Ahmed noted Plaintiff had a nerve conduction study, and the results were "basically negative." (*Id.*)

On January 25, 2012, Plaintiff had another appointment with Dr. Grubb. (Doc. 9-8 at 50.) Plaintiff's chief complaint was that her "pain [was] getting worse." (*Id.*) Plaintiff said she felt pain the "everywhere." (*Id.*). Due to "[i]ncreasing severity of neck pain, Cervical degenerative disc disease, [and] Cervical spondylosis," Plaintiff received three facet block injections in February, March, and June 2012. (*Id.* at 111-113.)

Dr. Rajeswari Kumar performed a consultative orthopedic examination on Plaintiff on June 11, 2012. (Doc. 9-8 at 103.) Dr. Kumar noted Plaintiff complained of pain in her neck, upper back, mid back, shoulders, arms, right knee, and both hips. (*Id.*) Plaintiff told Dr. Kumar that the symptoms "improved a little" with the treatment she received, but she had "constant aching and burning in the neck and lower back." (*Id.* at 104.) She said her pain was "aggravated with 15 minutes of sitting and standing and walking one-eighth of a mile, and lifting 10 to 15 pounds." (*Id.*) Dr. Kumar observed

that Plaintiff sit and stood "with normal posture," and "no evidence of any tilt or list." (*Id.* at 105.) In addition, Dr. Kumar noted Plaintiff had a normal gait and was able to "rise[] from a chair without difficult." (*Id.*) According to Dr. Kumar, Plaintiff exhibited "[t]enderness in the thoracic paraspinal region," not "no pain with range of motion." (*Id.*) Her range of motion was "within normal limits" in her shoulders, elbows, wrists, hands, hips, knees, and ankles. (*Id.* at 106.) However, Plaintiff had "limited" range of motion in her cervical and lumbar spine. (*Id.* at 107.) Dr. Kumar concluded that Plaintiff was limited to lifting and carrying "50lbs occasionally and 25lbs frequently," "standing and walking six hours in an eight-hour day, and sitting six hours "with routine breaks." (*Id.*)

**B.     Administrative Hearing**

Plaintiff testified at the hearing before the ALJ on August 6, 2013. (Doc. 9-3 at 36.) She reported that she worked as a school clerk from 1994 to 2005, as a bookkeeper from 2005 to 2008, and as a janitor until May 2011. (*Id.* at 41.) Plaintiff said she stopped working after she "woke up and couldn't move" due to "intense" pain. (*Id.*) She believed she was no longer able to work because she could not "move [her] arms," or "lift [her] right arm." (*Id.*) Plaintiff explained she could not move her right arm without pain, and it was causing her to "becom[e] left-handed." (*Id.*)

She reported that she had "disc damage in [her] neck," and sought treatment with a physical therapist, "a general doctor, a pain doctor, [and] an arthritis doctor." (Doc. 9-3 at 41-42.) Plaintiff said her treatment included pain medication, physical therapy, and "shots into [her] neck and into [her] shoulder." (*Id.* at 42.) According to Plaintiff, although the shots were "supposed to relieve the pain," they did not work "all the way." (*Id.*) She explained that "one set of shots seemed to have helped for a couple of days, but [she was] not sure if that was the medication or the shots." (*Id.*)

Plaintiff stated if she sat down, her pain went down her back and into her hips. (Doc. 9-3 at 42.) As a result, Plaintiff estimated she was only able to "sit for maybe half an hour or so," if she kept "shifting." (*Id.* at 43.) She said she did not "necessarily" have problems standing, if she could keep moving and "shifting." (*Id.* at 42-43.) Plaintiff testified that her "hips hurt really bad" if she walked distances, and estimated she could walk "maybe an eight of a mile" at one time. (*Id.* at 43.) Further, Plaintiff said she was able to "lift a gallon of milk" with her left hand, though she would drop it if she tried to use her right hand. (*Id.*)

Plaintiff stated she spent most of the day reading, while "lay[ing] on [her] back with a pillow underneath [her] neck and [her] knees up," as this was the only position that relieved her pain. (Doc. 9-3 at 44.) Furthermore, she reported she spent portions of the day completing only light chores, but these were accomplished slowly and she needed frequent breaks. (*Id*.) When completing "heavier chores," she had the assistance of a neighbor. (*Id*.)

Gregory Jones, a vocational expert ("VE"), testified after Plaintiff at the hearing and categorized her past employment using the *Dictionary of Occupational Titles*.[1] (Doc. 13-9 at 46.) He explained the position of bookkeeper, *DOT* 210.382-014, was skilled, sedentary work. (*Id*.) Plaintiff's work as an administrative clerk, *DOT* 219.362-010, was classified as semi-skilled and generally performed at the light exertional level, though Plaintiff performed it at "the medium exertional level." (*Id*.) Finally, the VE identified Plaintiff's most recent work as janitor, *DOT* 381.687-018, as unskilled and performed at the medium exertional level. (*Id*.)

The ALJ then asked the VE to consider a hypothetical individual, who was the same age as Plaintiff with a high school education and the ability to perform light work, "includ[ing] the ability to stand[, sit,] or walk six hours out of eight." (Doc. 9-3 at 46-47.) The VE opined this individual could perform Plaintiff's past work as a bookkeeper and an administrative clerk, "as performed in the general population in the economy." (*Id*. at 47.) The VE also opined the hypothetical individual could perform other light and unskilled work, including work as a general cashier, *DOT* 211.462-010; routing clerk, *DOT* 222.687-022; and information clerk, *DOT* 237.367-018. (*Id*. at 47-48.)

**C.   The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff had not engaged in substantial activity after the alleged onset date of May 31, 2011. (Doc. 9-3 at 26.) Second, the ALJ found Plaintiff's severe impairments included degenerative disc disease and fibromyalgia. (*Id*.) Third, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing. (*Id*.) Next, the ALJ determined that Plaintiff "had the residual functional

---

[1] *The Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

capacity to perform light work as defined in 20 CFR 404.1567(b) that does not preclude standing/ walking 6 hours in an 8 hour period and sitting 6 hours in an 8 hour period." (*Id*.) With residual functional capacity, the ALJ found at step four that Plaintiff was "capable of performing past relevant work as a bookkeeper and administrative assistant." (*Id*. at 30.) Furthermore, Plaintiff could perform additional jobs existing in significant numbers in the national economy, including work as a general cashier, routing clerk, and information clerk. (*Id*. at 31.) Consequently, the ALJ concluded Plaintiff was not "under a disability, as defined in the Social Security Act, at any time from May 31, 2011, the alleged onset date, through April 1, 2012, the date last insured." (*Id*.)

## **DISCUSSION AND ANALYSIS**

Appealing the ALJ's decision, Plaintiff contends, the ALJ erred by failing to state legally sufficient reasons to reject the credibility of Plaintiff's subjective complaints. (Doc. 14 at 13.) On the other hand, Defendant asserts the ALJ properly evaluated Plaintiff's credibility, and the decision should be affirmed by the Court. (Doc. 15 at 5.)

**A.     ALJ's Assessment of Plaintiff's Credibility**

In evaluating credibility, an ALJ must first determine whether the objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no affirmative evidence of a claimant's malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036; *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found the medical evidence supported Plaintiff's diagnosed impairments, but found her subjective complaints were "not entirely credible. (Doc. 9-3 at 27.) Accordingly, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding her pain.

Notably, in 1984, Congress amended the statutes governing disability to address allegations of pain. *See Bunnell*, 947 F.2d at 347; 42 U.S.C. § 423(d)(5)(A). With the amendment, "Congress clearly meant that so long as the pain is associated with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Howard v. Heckler*, 782 F.2d 1484, 1488

n.4 (9th Cir. 1986).  The Ninth Circuit observed,

> [D]espite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by objective medical findings.

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Therefore, an ALJ may not base an adverse credibility determination solely upon the medical evidence.  *Id.*; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the "lack of medical evidence cannot form the sole basis for discounting pain testimony").

Factors that may be considered as part of a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d at 603; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  Here, the ALJ considered the objective medical record, the treatment Plaintiff received, and her daily activities.  (Doc. 9-3 at 29.)  Plaintiff asserts these reasons were legally insufficient to support a rejection of her testimony regarding her symptoms. (Doc. 14 at 8, 10-11.)

        1.       Treatment received

In assessing Plaintiff's credibility about his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).  In addition, the treatment a claimant received, especially when conservative, is a legitimate consideration in a credibility finding.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).  In this case, the ALJ concluded Plaintiff was "treated conservatively with medication," and Plaintiff did not require more aggressive treatment.  (Doc. 9-3 at 29.)  However, Plaintiff argues treatment was not conservative, and that the ALJ could not fault Plaintiff "for failing to pursue non-

conservative treatment options if none exist." (Doc. 14 at 10.)

As Plaintiff notes, she was treated with narcotics and received facet block injections for her pain. (Doc. 14 at 9-10.) Notably, the Ninth Circuit has criticized an ALJ for characterizing treatment as conservative where the claimant's treatment included "copious amounts of narcotic pain medication as well as occipital nerve blocks and trigger point injections." *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (comparing the facts presented to those in *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008), where the ALJ found claimant's treatment to be conservative where claimant took only Ibuprofen to treat his pain)). Similarly, here Plaintiff was treated with narcotic medication and corticosteroid injections. Thus, Plaintiff has not received treatment that is only conservative in nature. *See Parra*, 481 F.3d at 751 (9th Cir. 2007) (finding that over-the-counter drugs constituted conservative treatment); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (conservative treatment included physical therapy and the use of anti-inflammatory medication); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not").

Further, the Ninth Circuit has stated "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt*, 382 Fed. App'x. at 664. In this case, no doctor proposed more aggressive treatment. Thus, the treatment Plaintiff received does not support the adverse credibility determination.

2.   Plaintiff's daily activities

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility where the claimant alleges she is unable to maintain attention or concentration. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Similarly, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant participates in community activities, gardens, and exercises. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

However, an ALJ must make a specific finding that the daily activities are transferable to a workplace to refute a plaintiff's allegations of disability. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2008).

In this case, the ALJ noted Plaintiff was "able to do dishes, laundry, read and perform[] light household chores." (Doc. 9-3 at 29.) Additionally, the ALJ stated Plaintiff could "grocery shop with her son, dust, sweep, vacuum, and drive." (*Id*.) Significantly, the Ninth Circuit has determined that the mere fact a claimant engages in normal daily activities "does not any way detract from [his] credibility as to [the] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, the Court opined, "Daily household chores . . . are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Notably, here, the plaintiff's last job was as a custodian. Thus, this could support a determination that the daily household activities were transferrable.

However, the ALJ failed to find that Plaintiff spent a "substantial" part of her day engaged in these activities or the extent to which these activities could be transferred to a work setting. As a result, Plaintiff's activities of daily living were not clear and convincing evidence to discount her credibility. *See Orn*, 495 F.3d at 639 (the ALJ erred rejecting a claimant's credibility where his "activities [did] not meet the threshold for transferable work skills, the second ground for using daily activities in credibility determinations"); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting). Thus, Plaintiff's activities of daily living do not support an adverse credibility determination.

3.     Objective Medical Record

The ALJ discounted Plaintiff's credibility because he concluded the "subjective complaints and alleged allegations [were] out of proportion to the objective clinical findings." (Doc. 9-3 at 29.) Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine… credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, the Ninth Circuit determined that "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis

10

for discounting pain testimony"); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (statements "may not be disregarded solely because they are not substantiated by objective medical evidence").

The ALJ determined that although Plaintiff testified to spending most of her day lying in bed, there was "no evidence of severe disuse muscle atrophy that would be compatible with her alleged inactivity and inability to function." (Doc. 9-3 at 29.) Furthermore, the ALJ pointed to an x-ray of the lumbar spine, a MRI, and a nerve conduction test, all of which showed minimal adverse findings. (*Id.*) Nevertheless, the medical record alone is not a clear and convincing reason to reject Plaintiff's testimony regarding the extent of her pain.

### 4. Failure to identify the testimony being discounted

"General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). Here, the ALJ failed to identify what portions of Plaintiff's testimony were not credible, and what testimony he rejected based upon the medical record.

By failing to identify the portions of Plaintiff's testimony the ALJ believed were not credible, the ALJ failed to apply the correct legal standards. As a result, the adverse credibility determination were not properly supported. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (an ALJ's credibility findings may only be upheld when it is "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds.")

### B. Remand is appropriate in this action

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative

agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).  The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony can credited as true, and remand is not appropriate.  *Lester*, 81 F.3d at 834; *see also Smolen*, 80 F.3d at 1292.

However, courts retain flexibility in crediting testimony as true.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  A remand for further proceedings regarding the credibility of a claimant is an appropriate remedy.  *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . .").  Here, the record is insufficient to determine whether Plaintiff is disabled if the limitations to which she testified were adopted.  Consequently, the matter should be remanded for the ALJ to re-evaluate the evidence.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the ALJ failed to articulate clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective complaints.  As a result, the administrative decision should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Charla Hooper and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 23, 2016**              **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE